(No. 4627.   October 15, 1927.)

# AMERICAN FRUIT GROWERS, INC., a Corporation, Appellant, v. LAWRENCE WALMSTAD, Respondent.

[260 Pac. 168.]

ATTACHMENT—POSSESSION OF PERSONAL PROPERTY DEFINED—STATU-
TORY REMEDY—DUTY OF LEVYING OFFICER—EVIDENCE—SERVICE OF
PROCESS—PRESUMPTION OF LAW—RETURN OF SUMMONS, EFFECT—
STRANGERS TO RECORD—EXTRINSIC EVIDENCE—OFFICER'S RETURN
HELD IMPEACHED — LOSS OF LIEN — REPLEVIN — RIGHT TO IMME-
DIATE POSSESSION—CORPORATIONS—AUTHORITY OF GENERAL MAN-
AGER.

1.  Possession of personal property is *indicia* of ownership, and one in custody of personal effects is presumed to be rightfully in possession until the contrary appears.

2.  Remedy by attachment is entirely statutory, and the requirements of the statute must be substantially followed, otherwise the attaching creditor acquires no superior right or lien upon debtor's property.

3.  Under C. S., sec. 6784, tangible property susceptible of manual seizure and delivery must on attachment be actually seized and taken into possession by the levying officer, who must maintain actual custody and control of property by such means as will exclude others from such custody.

4.  Presumption of law is, until the contrary is proved, that an officer has performed his duty and that return correctly states facts relative to service of process.

5.  Under C. S., sec. 3598, sheriff's return of summons is *prima facie* evidence of service and can only be overcome by clear, unequivocal and convincing proof that service was not made.

6.  Generally, return to process is not conclusive as to strangers to record, but is only *prima facie* evidence of facts stated, which may be impeached by extrinsic evidence.

7.  Evidence, relative to possession of property alleged to have been attached, *held* to conclusively impeach officer's return showing attachment of such property by taking into possession and placing a keeper in charge.

8.  Lien of attachment of potato sacks, if made in substantial compliance with law, *held* lost when sheriff or keeper permitted one claiming possession thereof to take and retain possession of

Argument for Appellant.

the property, since lien of attaching creditor was dependent upon continuance of possession by sheriff.

9. It is not necessary that plaintiff, in action to recover personal property, establish ownership, all that is necessary being right to immediate possession, since action is essentially a possessory one, and ownership is only incidental to main issue.

10. Manager of corporation clothed with full authority to transact business for and on behalf of corporation is presumed to have authority to do anything in furtherance of its business, in absence of evidence showing any limitations thereon.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action in claim and delivery. Judgment for defendant. *Reversed.*

Morgan & Smith, for Appellant.

The purchaser of property at execution sale acquires no greater right thereto than the debtor had on the day the execution or attachment was levied. (C. S., secs. 6928 and 6929.)

Personal property capable of manual delivery can only be attached by taking it into custody. (C. S., sec. 6784,

Publisher's Note.
1. See 10 R. C. L., Evidence, sec. 22.
2. See 2 R. C. L., Attachment, sec. 2.
3. Sufficiency of levy on personal property, see notes in 21 Am. Dec. 677; Ann. Cas. 1916B, 984, 1000.
4. See 10 R. C. L., Evidence, sec. 27.

Attachment, 6 C. J., sec. 12, p. 36, n. 46; sec. 428, p. 225, n. 47; sec. 430, p. 226, n. 58; sec. 514, p. 266, n. 13; sec. 591, p. 310, n. 1, 6.
Corporations, 14a C. J., sec. 2249, p. 396, n. 12.
Evidence, 22 C. J., sec. 69, p. 130, n. 30; sec. 71, p. 141, n. 75.
Process, 32 Cyc., p. 511, n. 87; p. 512, n. 88 New; p. 517, n. 27, p. 518, n. 34.
Property, 32 Cyc., p. 678, n. 12.
Replevin, 34 Cyc., p. 1386, n. 53, p. 1387, n. 54, p. 1389, n. 65.

subd. 3; 6 C. J. 226, par. 430; *Green v. Hooper,* 41 Nev. 12, 167 Pac. 23; *Crisman v. Dorsey,* 12 Colo. 567, 21 Pac. 920, 4 L. R. A. 664; *Lyeth v. Griffis,* 44 Kan. 159, 24 Pac. 59; *Rix & Stafford v. Silknitter,* 57 Iowa, 262, 10 N. W. 653.)

The lien acquired by the levy of a writ of attachment on property capable of manual delivery is lost by failure to retain possession. (*Keith v. Ramage,* 66 Mont. 578, 214 Pac. 326; *Green v. Hooper, supra; Thompson v. Baker,* 74 Me. 48; *Knox v. Binkoski,* 99 Conn. 582, 122 Atl. 400; *Taintor v. Williams,* 7 Conn. 271.)

In an action of claim and delivery the real question in issue is the right to possession of the chattels in controversy, and it may be maintained by one having a qualified property therein if he has the right of possession. (*Blackfoot City Bank v. Clements,* 39 Ida. 194, 226 Pac. 1079; *Smith v. Washburn-Wilson Seed Co.,* 40 Ida. 191, 232 Pac. 574; *Schleiff v. McDonald,* 41 Ida. 50, 237 Pac. 1108; *William Johnson Land & Livestock Co. v. Harris,* 48 Nev. 312, 231 Pac. 1095.)

Hugh N. Caldwell, for Respondent.

In an action of claim and delivery the plaintiff must recover upon the strength of its own title or right to possession and not upon the weakness of the defendant's title or right to possession. (*Mountain Home Sheep Co. v. Farady & Weaver,* 36 Ida. 633, 212 Pac. 970; *Carstensen & Anson Co. v. Wright,* 25 Ida. 492, 138 Pac. 830.)

The levy of attachment in the action of *Heston v. Wilder Equity* is not subject to collateral attack by the appellant in the action at bar. (*Carothers v. Wilkerson,* 2 Tex. App. Civ. Cas., sec. 353.)

The general rule is that where a return on attachment has been made which is sufficient on its face, every reasonable presumption will be made in favor of the validity of the levy. (6 C. J., sec. 470, p. 245; *Deware v. Wichita Valley Mill etc. Co.,* 17 Tex. Civ. App. 394, 43 S. W. 1047; *White v. Ladd,* 41 Or. 324, 93 Am. St. 732, at 738, 68 Pac. 739.)

ADAIR, Commissioner.—This action was instituted by appellant to recover from respondent 4,000 potato sacks, or the value thereof in case possession could not be obtained. The complaint alleged that appellant was the owner of the sacks; that appellant had made demand on respondent for their return, which had been refused; the value of the property was stated; and it also contained the other usual and necessary averments. In his answer respondent admitted his possession and plaintiff's demand and his refusal to comply therewith; and by failing to deny he admitted the alleged value, but specifically denied appellant's right and title to any of said property.

The evidence shows that in the summer of 1922, a corporation, which for brevity we will hereinafter designate as the Equity, and engaged at Wilder, Idaho, in buying and selling farm products, had ordered two cars of sacks, which were to be resold to its patrons for use in shipping potatoes. The Equity, not having available sufficient funds with which to pay for more than one-half carload of sacks, and not being able to unload the shipment as a consequence thereof, procured the appellant to advance money or pay for one and one-half cars of said sacks. A warehouse receipt was issued to appellant by M. A. Rodgers, general manager of the Equity, covering the sacks paid for by appellant, and the sacks were left in storage in the Equity warehouse, with the understanding that it might sell any portion thereof to farmers upon paying over the proceeds from such sales to appellant. Both the Equity and appellant were separately engaged in handling potatoes, and the sale of such sacks facilitated the business of both corporations.

Early in January, 1923, a question arose as to the validity of a warehouse receipt beyond the year of its issue, and the Equity's manager thereupon issued to appellant a new receipt for the sacks then remaining unsold. It was apparent there would not be a market for the sacks, many of which must be carried over for sale during the ensuing year; and to assist appellant to finance this deal, it was agreed that the

Equity should, in addition to the warehouse receipt, make and execute its promissory note to appellant for the value of the unsold sacks. This was done, and a note in the approximate sum of $8,000 was delivered to appellant, which note has since been retained or negotiated, and it has never been surrendered to the maker. The Equity was not the owner or operator of a licensed bonded warehouse under the laws of this state.

These sacks remained in the possession of the Equity until September 1, 1923. On that date the Equity was in serious financial difficulties, and its manager called appellant's agent on the phone, and advised him to come to Wilder and immediately remove the sacks, since receivership proceedings were imminent, and the creditors of the Equity might levy upon, or attempt to take possession of, this property of appellant's. The representative of appellant went to Wilder that day, and removed from the Equity warehouse 31,000 of these sacks, that being all that remained unsold, and stored them elsewhere.

Prior to this time a suit had been commenced by one E. E. Heston, a creditor of the Equity, and a writ of attachment issued under which the sheriff attempted to levy upon 4,000 of said sacks while they were still in the Equity warehouse. In his return to the writ the officer certified in part as follows:

"I did on the 2nd day of April, 1923, attach the following described personal property, in the possession of the Wilder Equity Association, viz.: Four Thousand (4000) 'Calcutta' grain Bags; and attached the same by taking into my possession and placing a keeper in charge."

The sheriff was not called as a witness at the trial, and no evidence whatsoever was adduced on behalf of respondent to show how this levy was made, other than by the introduction of said return. Positive and uncontradicted testimony of other witnesses shows that on April 2, 1923, the general manager and two of the directors of the Equity were in Caldwell; that, knowing of this suit by Heston, they went to the sheriff's office, and there the president of this

corporation, as such, was served with summons and writ of attachment, this being done, it was stated, to save the expense of the officer going to Wilder to make service of such process. The sheriff then and there appointed F. L. Dickerson, one of the directors present, as keeper of the attached property. Another witness who was, on April 2d, the date the sheriff certifies he made said attachment, in actual charge of the warehouse and place of business of the Equity at Wilder, testified positively that neither the sheriff, his deputies, nor keeper, at any time on that date entered the warehouse, or took possession of any of said property. There is no evidence in the entire record that the sheriff or any representative of his, either before or after that day, ever took possession of these sacks. The property remained in the basement of the warehouse, unsegregated from the mass of 31,000 or more sacks which were covered by appellant's receipt, and under the exclusive control of the Equity, which corporation was the attachment debtor, until removed by appellant as aforesaid. The removal was accomplished with the express sanction, and on the request and suggestion, of the manager of the Equity. From September 1st to December 20th, these sacks remained in the new warehouse to which they had been taken, and in the exclusive possession and control of appellant or its warehouseman.

Heston, in his suit against the Equity, prosecuted his action to judgment against that corporation. By virtue of said attachment, on December 20th, the sheriff sold 4,000 of these sacks to this respondent. Upon learning of such sale, appellant made demand of respondent for the return of this property, which was refused, and this action was commenced. The cause was tried by the court and a jury, and a verdict was rendered and judgment entered for respondent, from which this appeal is taken.

[1] The only title or right which respondent has to these chattels is that derived from the sale made to him by the sheriff on December 20, 1923. Possession of personal property is *indicia* of ownership. One in custody of personal effects is presumed to be rightfully in possession until the

contrary appears. On December 20th, just prior to the sale, and for months before, appellant was and had been in the open, notorious and exclusive custody, possession and control of these articles of personalty, keeping them in a warehouse of his own selection. Neither the sheriff, keeper, nor even the officers of the Equity had any access to, or dominion over, any of these sacks whatsoever during said period. On that date the sheriff purported to sell them, by virtue of said attachment, to respondent, who was a bidder at the sheriff's sale.

Of course, if this property actually belonged to appellant, as it contends, at the time of the attempted levy, no service having been made on it, and it not being a party to the suit in which the attachment issued, appellant would not be divested of title by virtue of such sale, which would be a nullity. On the other hand, if these sacks were the property of the Equity on April 2d, and the appellant had only loaned it money without holding the property as a pledge to secure such loan, the validity of the levy would determine whether or not the act of the manager in subsequently delivering possession to appellant was proper and legal, or wrongful and illegal, as to such attaching creditor. If appellant had no interest or title in and to said property, and the levy was made in accordance with law, and the lien thereof had been preserved, the act of the manager in delivering the property to appellant on September 1st would have been a trespass, and the right of possession would not under such circumstances, have been vested in appellant at the time of the sale.

[2] Resort must be had to the record to determine whether or not a valid levy was actually made. The remedy by attachment is entirely statutory, and the requirements of the statute must be substantially followed; otherwise, the attaching creditor acquires no superior right or lien upon the debtor's property. (*Williams v. Olden,* 7 Ida. 146, 97 Am. St. 250, 61 Pac. 517.)

With reference to the execution of the writ of attachment, C. S., sec. 6784, provides that personal property capable of manual delivery must be attached by taking it into custody.

[3]   In case of tangible property, susceptible of manual seizure and delivery, such property must be actually seized and taken into possession by the levying officer, and that officer must take and maintain actual custody and control of the property by such means as will exclude others from such custody. (6 C. J. 226, 227; *Crisman v. Dorsey*, 12 Colo. 567, 21 Pac. 920, 4 L. R. A. 664; *Falk-Bloch etc. Co. v. Branstetter*, 4 Ida. 661, 43 Pac. 571; *Green v. Hooper*, 41 Nev. 12, 167 Pac. 23.)

"A sheriff levying upon personal property left a portion thereof in an out-building, one of the debtors having the key. He assumed to levy upon them but did not take actual possession thereof. One 'J' agreeing to be responsible for all the property, it was left with him until day of sale. *Held*, that the levy was insufficient." (*Rix v. Silknitter*, 57 Iowa, 262, 10 N. W. 653.)

In *Keith v. Ramage*, 66 Mont. 578, 214 Pac. 326, it was held that the abandonment of attached property by the sheriff's keeper is an equivalent to a surrender of the property by the sheriff. It is requisite, therefore, that the levying officer take actual manual possession of the property attached, and that he maintain the same either personally or through the agency of a keeper.

[4]   The presumption of law is, until the contrary is proved, that an officer has performed his duty, and that the return correctly states the facts relative to service of process.

"The return of the sheriff upon process of notices is *prima facie* evidence of the facts in such return stated." (C. S., sec. 3598.)

[5]   A sheriff's return of summons is *prima facie* evidence of service, and can only be overcome by clear, unequivocal and convincing proof that service was not made. (*Boise Valley Traction Co. v. Boise City*, 37 Ida. 20, 214

Pac. 1037; *Long v. Burley State Bank,* 30 Ida. 392, 165 Pac. 1119.)

[6] It may generally be stated that a return to process is not conclusive as to strangers to the record; that such return is only *prima facie* evidence of the facts stated, and may be impeached by extrinsic evidence, but the proof of the falsity thereof must be clear and convincing. (21 R. C. L., p. 1321, sec. 70.)

[7] In the instant case, the return recites that the officer took possession and placed a keeper in charge of the property. This return is unsupported by a single other fact in the record. Impeaching it, there is positive and convincing proof that the writ was served in a town distant from the location of the property; that the sacks were not taken into the possession of the sheriff or any other officer; that they remained in the basement of the warehouse from that date for five months, in the exclusive possession of the attachment debtor and subject to sale and removal by its officers; that thereafter they were removed to another warehouse, where they remained for a period of practically four months in the possession of appellant, and without a single act of dominion or interference on the part of the officer. We think the return is conclusively impeached by clear, cogent and convincing proof.

[8] However, if we should admit the truth of the statements in the return, that the levy was made in substantial compliance with the law, the lien thereof was absolutely lost when the sheriff or his keeper permitted appellant to take and retain possession of the property. Even the return of the sheriff does not purport to indicate that he continued in possession, and the evidence is entirely uncontradicted that at least from September 1st to the date of sale, this property was out of the control of the officer, and was in no sense *in custodia legis.* The lien of the attaching creditor, if any he ever had, was dependent upon the continuation of possession by the sheriff.

There being no lien on this property by virtue of the attachment, or if such a lien ever existed it having been lost,

it is immaterial whether appellant was the actual owner of the property as claimed by it, or whether it had come into the lawful possession thereof as pledgee to secure an advance made by it to the Equity. In either event, appellant was entitled to possession at the time the sheriff sold this property to respondent.

[9] In an action to recover personal property it is essential for the plaintiff to show that he is entitled to immediate possession. In such an action he is not required to establish ownership, but merely a right to the immediate possession. The action is essentially a possessory one, and ownership is only incidental to the main issue. (*Blackfoot City Bank v. Clements,* 39 Ida. 194, 226 Pac. 1079; *Smith v. Washburn-Wilson Seed Co.,* 40 Ida. 191, 232 Pac. 574; *Schleiff v. Mc-Donald,* 41 Ida. 50, 237 Pac. 1108.)

While it is true that the complaint asserts appellant's ownership of this property, that allegation is immaterial, the right of possession being the controlling issue, and the question of ownership being only incidental thereto.

[10] It is contended that the acts of Rodgers in giving the warehouse receipt, and in delivering this property to appellant on September 1st, were without authority and beyond his powers as manager. He was the general manager, clothed with full authority to transact business for and on behalf of this corporation. His authority to do anything in the furtherance of the business of the Equity is presumed, in the absence of evidence showing any limitations thereon.

Recapitulating the undisputed facts shown in the record, it conclusively appears that appellant made demand before suit for the return of the property; that its value is unquestioned and proven to be that stated in the complaint; that respondent withheld possession thereof from appellant; that appellant was either the absolute owner or was entitled to possession as pledgee; that actual exclusive possession of the property was given to appellant by a person having full authority so to do, and at a time when the attaching creditor of the Equity had no valid subsisting lien thereon; that the

appellant was in the rightful possession thereof at the time it was seized by the sheriff, and by that officer sold and delivered to respondent; and that respondent's possession was thereafter wrongful and unlawful. Under either the theory of actual ownership or that the property was held by it as pledgee, appellant was entitled to possession and was wrongfully deprived thereof by the sheriff, and thereafter by respondent.

Had it been necessary to determine whether this property was actually owned by appellant, or simply pledged to it as security by the Equity, or had these chattels remained in the Equity warehouse, the conflict between the sheriff's return and the other evidence impeaching same, would have presented questions properly for the consideration of the jury. In view of the fact, however, that no lien existed in favor of the attaching creditor at the date of said sheriff's sale, and of the further fact that appellant was then in the rightful possession of the property, the question of ownership was immaterial. There was no issue of fact to be determined by the jury, and the motion for a directed verdict in favor of appellant should have been granted.

We recommend that the judgment be reversed and the cause remanded, with instructions to the trial court to enter judgment in accordance with the views herein expressed.

Babcock and Featherstone, CC., concur.

The foregoing is approved as the opinion of the court. The judgment is reversed and the cause remanded for entry of judgment in favor of appellant. Costs to appellant.

Wm. E. Lee, C. J., and Givens, Taylor and T. Bailey Lee, JJ., concur.